IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SANDRA O. BONIOL, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )    CIVIL ACTION NO. 15-0338-KD-N |
| | ) |
| PCH HOTELS AND RESORTS | ) |
| INCORPORATED d/b/a GRAND HOTEL | ) |
| MARRIOTT RESORT, GOLF CLUB | ) |
| AND SPA; ALABAMA REAL ESTATE | ) |
| HOLDINGS, INC.; GRAND HOTEL | ) |
| MARRIOTT RESORT, GOLF CLUB | ) |
| AND SPA, and MARRIOTT GRAND | ) |
| HOTEL, INC., | ) |
| | ) |
|     Defendants. | ) |

## ORDER

This action is before the Court on the motion for summary judgment filed by

Defendants PCH Hotels and Resorts Incorporated d/b/a Grand Hotel Marriott Resort, Golf Club

and Spa; Alabama Real Estate Holdings, Inc.; Grand Hotel Marriott Resort, Golf Club and Spa;

and Marriott Grand Hotel, Inc. (doc. 35), Plaintiff Sandra O. Boniol's response (doc. 37) and

Defendants' reply (doc. 39).[1]  Upon consideration and for the reasons set forth herein, the

motion for summary judgment is DENIED in part as to Plaintiff's negligence cause of action

and GRANTED as to Plaintiff's wantonness cause of action.

---

[1]  The Defendants' motion to strike Plaintiff's Exhibit B (photographs taken from behind a man walking down the stairs) (doc. 38) is GRANTED.  Plaintiff provided no evidence that the photographs accurately represent the stairwell as it existed at the time of the incident. The motion to strike Exhibit C, Plaintiff's husband's affidavit (doc. 38) is GRANTED IN PART.  The last three paragraphs are stricken to the extent that they contain statements that are not based upon personal knowledge, but instead are legal conclusions or expert opinions based on his lay observation of the stairwell.

## I. Conceded claims

Plaintiff alleged negligence and wantonness against all Defendants (doc. 27, second amended complaint).  In her response, Plaintiff concedes that her wantonness cause of action is due to be dismissed (doc. 37, p. 13). Therefore, summary judgment is granted in favor of Defendants as to Plaintiff's wantonness claims and causes of action.

Plaintiff also concedes that certain claims within her negligence cause of action are due to be dismissed. Specifically, that the Defendants negligently "designed, built, and/or constructed the subject fire valve"[2] and that Defendants were negligent in the hiring, training and supervision of their employees[3] (doc. 27, ¶ 7(a) & (i)).  Therefore, summary judgment is granted in favor of Defendants as to Plaintiff's these specific negligence claims and causes of action.

## II. Factual background[4]

Plaintiff Boniol and her family members were staying at the Grand Hotel. Plaintiff and her granddaughter were walking down the stairs. While they were descending, at about the last

---

[2] Plaintiff alleges that her injuries were caused by Defendants' "[n]egligently designing, building, constructing, maintaining, and/or marking the premises"  (Doc. 27, p. 5, ¶ 7(a)). There is no allegation that the Defendants negligently "designed, built and/or constructed the subject fire valve" as stated in Plaintiff's response (doc. 37, p. 13).  Therefore, it appears that Plaintiff meant to concede only part of the claim of negligence in ¶ 7(a), and reserved the claims related to maintaining or marking the premises.

[3] Plaintiff alleges that her injuries were caused by Defendants' "Negligently failing to adequately supervise and/or train its agents and/or employees to carry out its business and to follow its rules, regulations, policies and/or procedures" (doc. 27, ¶ 7(i).

[4] "Although the 'facts,' as accepted for purposes of summary judgment, may not be the actual facts of the case, 'our analysis ... must begin with a description of the facts in the light most favorable to the plaintiff' and our decision must accept those facts." *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1247 (11th Cir. 2013)

three steps, Plaintiff's granddaughter said that her shoe was untied. Plaintiff told her granddaughter to wait until they reached the bottom of the stairs and she would tie the shoe. They stopped at the bottom.  Plaintiff's granddaughter had her right hand on the stair rail. Plaintiff squatted down, facing her granddaughter, and tied the shoe.

Plaintiff's back was toward the fire hose valve, which was on the wall at the ground floor.  As Plaintiff stood up, her purse fell off her left shoulder.  Plaintiff picked up her purse with her right hand and used her left hand to lift the purse strap up to her left shoulder.  She put her right hand down and took her granddaughter's hand. When she put her left hand down from her shoulder, her left hand hit the fire hose valve. (Doc. 37-1, p. 1-9, Exhibit A, Boniol deposition).  Plaintiff fractured the fifth metacarpal bone in the palm of her left hand (doc. 27, amended complaint, ¶9).

The fire hose valve was affixed to a beige or cream-colored wall at the bottom of the stairwell. The red wheel on the valve faced the stairwell. The body of the valve was gold (docs. 35-3, 34-4, 35-7, 35-8, 35-9).  According to Plaintiff, the valve protruded "a minimum of six inches from the wall, approximately three-four feet into the air" (doc. 37, p. 7).  Plaintiff admitted that she "never saw the fire wheel" (doc. 35-2, p. 12).

Plaintiff and her granddaughter entered the stairway from the third floor.  She estimated that about twenty people were walking down the stairwell in front of them (doc. 35-2, p. 6). People were still turning out of the stairwell when she reached the third or fourth step from the bottom, but when she stopped at the ground floor, the other people "were gone" from the stairwell (doc. 35-2, p. 11). Plaintiff believes that the people in front of her contributed to her inability to see the fire hose valve (doc. 35-2, p. 18).

Plaintiff recalled that the stairwell was "very dim" (doc. 35-2, p. 17). When shown

photographs of the stairwell,[5] Plaintiff responded "[i]t's very lit up. It wasn't like that" (*Id.* at p. 16).  Plaintiff remembered the area as "dimmer" than the photographs and that "they must have put a light there because it wasn't like that at all.  It was shadowed". (*Id*. p. 17)  On the day of the incident, the "only way [Plaintiff] could see" was "from the light coming from [a] sitting area" near the end of the stairs (*Id.*).  She recalled "very, very bright sunlight coming from [a] window" in the sitting area but it was not "shining into the hallway corridor" but only into a limited area (doc. 37-1, p. 9).  Plaintiff thought the photos were "probably taken at an earlier part of the day. Because when [she] left, it was 5:30, so the sun was not in that area at that time of the day" (*Id.*).  She thought "[i]t was very, very dark in the stairwell" (doc. 37-1, p. 9). Plaintiff recalled a light "at the top of the stairwell", "nothing down the … stairwell", and that the light above the fire hose valve "definitely was not" on. (*Id*., p. 10)  Although she thought the stairway was dim, Plaintiff was able to see each step as she descended (doc. 35-2, p. 19).

Plaintiff's husband stated that when he entered the stairwell he noticed it was "dimly lit" (doc. 37-3).  He also stated that he, their grandson, and several people proceeded down the stairs, with the Plaintiff and their granddaughter at the rear (*Id.*). After he took Plaintiff to the hospital, he examined the fire hose valve (*Id.*). Plaintiff's husband took photographs of the bottom of the stairwell and the fire hose valve (doc. 35-2, p. 15).[6]  Plaintiff  asked her husband "to take pictures, because [she] didn't know what [she] had hit" (doc. 35-2, p. 15).

---

[5]  Plaintiff was shown Defendant's Exhibits 1 and 2 (doc. 37-1, p. 4). These photos are attached to Defendants' motion for summary judgment as Exhibit B and Exhibit C (doc. 35-3, 35-4)

[6] The photographs are attached to Defendants' motion for summary judgment as Exhibits F, G and H (docs. 35-7, 35-8, 35-9).  Two of the photographs are attached to Plaintiff's response as Exhibit D (doc. 37-4).

Mike Dowling, Corporate Director of Loss Prevention and Risk Management, investigated the incident. He testified that to his knowledge, during the past eight years that he had been at the Grand Hotel, there were no "incident [reports] of protrusions from the wall" (doc. 35-6, p. 2).  He stated that no one had "ever hurt themselves on this particular" fire hose valve (*Id.*, p. 3).  Dowling also testified that the light above the fire hose valve stays on to keep the stairway well lit (*Id.*).[7]  In response to interrogatories, Defendants stated that they were unaware of any other incident where a person was injured in the stairway (doc. 35-3, p. 2).

James K. Ward, the Loss Prevention Supervisor at the Grand Hotel, inspected the stairway shortly after the accident and took three photographs (doc. 39-1, p. 3-4).  He found the stairway lights were working.  He perceived the stairway as "lit up" and did not think there was "a problem with the lighting … for someone to not see something"  (doc. 35-10, p. 4).  Ward testified that the lighting conditions of the stairway as shown in two photographs was consistent with what he saw the day the photographs were taken (doc. 39-1, p. 4; doc. 35-3 and 35-4).

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Rule 56(c) governs procedures and provides as follow:

(1) *Supporting Factual Positions*. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for

---

[7] Defendants cite to page 28 of Dowling's deposition. That page, however, does not contain this statement (doc. 35-6, p. 4).   The Court anticipates that Defendants could provide the Court with a copy of the correct deposition page to support this allegation.

purposes of the motion only), admissions, interrogatory answers, or other materials; or

    (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

  (2) *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

  (3) *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.

  (4) *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c).

Defendants as the parties seeking summary judgment, bear the initial responsibility of informing the district court of the basis for their motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which they believe demonstrate the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If Defendants fail "to discharge the initial burden, then the motion must be denied and the court need not consider what, if any, showing the non-movant has made." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993); *Clark*, 929 F.2d at 608.

If Defendants carry their initial summary judgment burden, the responsibility shifts to Plaintiff "to show the existence of a genuine issue of material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d at 1115. If she fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then Defendants, as the moving

party, are entitled to summary judgment. *Celotex*, 477 U.S. at 323.  In deciding whether Plaintiff, the non-moving party, has met her burden, her evidence is to be believed and all reasonable inferences drawn in her favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted); *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (On motion for summary judgment, "[t]he evidence, and all reasonable inferences, must be viewed in the light most favorable to the nonmovant....")

## III. <u>Statement of the Law</u>

The parties do not dispute that Plaintiff was a business invitee and that Defendants were the invitor. "The well established rule is that an invitor owes a duty to an invitee to keep its premises in a reasonably safe condition and to warn an invitee of any danger about which the invitor has a superior knowledge or that is not open and obvious." *Waters v. Paul Enterprises, Inc.*, 130 So. 3d 1220, 1222 (Ala. Civ. App. 2013) [8] (citations omitted); *South Alabama Brick Co. v. Carwie*, - - - So. 3d - - - 2016 WL 1077265, at *5 (Ala. Mar. 18, 2016) (unreported opinion) (the "basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries.  If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be liable"). An invitor's "duty to warn extends only to hidden defects and dangers that are known to [the invitor], but that are unknown or hidden to the invitee." *South Alabama Brick Co.*, 2016 WL 1077265, at *5 (citations omitted).  "The duty to keep premises safe for invitees applies only to the defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee,

---

[8]   The substantive law of the forum state, Alabama, applies because this removed action is before the Court on basis of diversity jurisdiction. 28 U.S.C. § 1332.

and would not be observed by him in the exercise of ordinary care." *Waters*, 130 So. 3d at 1223; *South Alabama Brick Co.*, 2016 WL 1077265, at *6 (same).  "All ordinary risks present are assumed by the invitee, and the [invitor] is under no duty to alter the premises so as to [alleviate] known and obvious dangers. The [invitor] is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care." *South Alabama Brick Co.*, 2016 WL 1077265, at *6 (citations omitted; emphasis deleted; bracketed text in original).

The invitor "has no duty to warn an invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Dolgencorp, Inc. v. Taylor,* 28 So. 3d 737, 742 (Ala. 2009) (citation omitted). "In a premises-liability setting", the Alabama courts "use an objective standard to assess whether a hazard is open and obvious. . . . [T]he question is whether the danger should have been observed, not whether in fact it was consciously appreciated."  *Dolgencorp, Inc*., 28 So. 3d at 741-42. The Alabama courts have applied the "no duty rule" when an inviter lacks superior knowledge of a danger such as when a condition was as known or obvious to the invitee as the inviter. *South Alabama Brick Co.*, 2016 WL 1077265, at *6.  The duty "is measured by an objective standard, not the subjective state of the invitee's knowledge.  The question is what was objectively reasonable for the invitor to expect the invitee to know. … [A]n invitor's duty before an accident is not determined by 'the invitee's subjective state of mind' at the moment of the accident." *Id.* (citations omitted).  Also, whether the condition that caused Plaintiff's injury "was open and obvious is an affirmative defense, for which [Defendants] bear the ultimate burden of proof." *Dolgencorp, Inc*., 28 So. 3d at 742.

Under Alabama law, the "focus of [] premises liability law is not on the care that may

have been exercised by the invitee, . . .  but on relieving a premises owner of a legal liability where an invitee knew of the danger that caused the injury or should have observed that danger through the exercise of reasonable care." *Sheikh v. Lakeshore Foundation*, 64 So. 3d 1055, 1059 (Ala. Civ. App. 2010) (citation omitted).  "[A]s a general rule, [invitor] is not liable for an injury to an invitee resulting from a danger which was known to the invitee or which was obvious or should have been observed by the invitee in the exercise of reasonable care, or from a condition which was as well known or as obvious to the invitee as to the inviter, or from a danger which the invitee should reasonably have appreciated before exposing himself to it, or which the inviter had no reason to believe would not be discovered by the invitee."  *South Alabama Brick Co.,* 2016 WL 1077265, at *6 (bracketed text added).

"A condition is 'obvious' if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee. . . . A condition is 'known' if the invitee is aware of the existence of the condition and appreciates the danger it involves. Questions of openness and obviousness of a defect or danger and of an [invitee's] knowledge are generally not to be resolved on a motion for summary judgment. . . . Additionally, … even though a defect is open and obvious, an injured invitee is not barred from recovery where the invitee, acting reasonably, did not appreciate the danger of the defect." *Waters,* 130 So. 3d at 1223 (citing *Ex parte Kraatz,* 775 So. 2d at 803-804) (internal quotations omitted).  The "plaintiff's appreciation of the danger is, almost always, a question of fact for the determination of the [trier of fact]." *Waters,* 130 So. 3d at 1225) (bracketed text in original).   However, Alabama "[a]ppellate courts have concluded that conditions may be 'open and obvious' as a matter of law in certain situations[.]" *Sheikh,* 64 So. 3d at 1061 (citation omitted) (collecting cases).

9

"Under Alabama law, the existence of a duty is a legal question to be determined by the court." *South Alabama Brick Co. Inc*., 2016 WL 1077265, at *5 (citing *Wal–Mart Stores, Inc. v. Smitherman*, 872 So.2d 833, 837 (Ala. 2003)). "The existence of a duty is determined by a number of factors, including (1) the nature of the defendant's activity; (2) the relationship between the parties; and (3) the type of injury or harm threatened." *Pritchett v. ICN Medical All., Inc*., 938 So. 2d 933, 937 (Ala. 2006) (citation and internal quotations omitted). "The key factor is whether the injury was foreseeable by the defendant." *Id.* (citations omitted). However, it is not error to submit the question to the jury if the factual basis for the question is in sufficient dispute". *Garner v. Covington County*, 624 So.2d 1346, 1350 (Ala.1993) ("Although the existence *vel non* of a duty is ordinarily a question of law for the court, it is not error to submit the question to the jury if the factual basis for the question is in sufficient dispute: to allow the trial court to determine such questions would undermine the traditional factfinding function of the jury.").

## IV. Analysis[9]

Defendants first argue that Plaintiff cannot present substantial evidence that the fire hose valve was a dangerous or defective condition on the premises. Defendants point out that the stairwell has been open to guests since 1986 and the valve has caused no injury. They also assert that Plaintiff has not presented any evidence that the fire hose valve is dangerous or

---

[9] Plaintiff did not concede her cause of action for negligence based upon Defendant's alleged duty to "maintain the premises in a safe condition, and to monitor, inspect, discover, eliminate, mark, remedy, and/or warn of hazards" (doc. 37, p. 13). The Court agrees with Defendants that Plaintiff has not presented sufficient evidence in support of her claims that Defendants failed to monitor, inspect, discover, eliminate, mark or remedy, the alleged dangerous condition on the premises. Therefore, summary judgment is granted in favor of Defendants as to these allegations of negligence. The remaining allegations regarding the duty to maintain the premises in a safe condition or to warn of hazards are addressed in this order.

defective or violated any standard of care.

Alternatively, Defendants argue that they had no duty to warn the Plaintiff because the fire hose valve was open and obvious. They argue that Plaintiff admitted she was not looking ahead as she descended but instead was looking at her granddaughter, and therefore, did not exercise reasonable care.  Defendants also respond to Plaintiff's testimony that approximately twenty other guests were in front of her and prevented her from seeing the valve, by pointing out Plaintiff's testimony that by the time she reached the bottom of the stairs the other people were gone; thus, at that point no one prevented her from seeing the fire hose valve.

Defendants conclude that Plaintiff's testimony, and her husband's affidavit regarding the lighting in the stairwell, are not supported by any objective evidence.  Specifically, Defendants point to the three photographs taken by Plaintiff's husband shortly after the incident as showing that the stairway was lighted in the area of the fire hose valve.  They also point out that their Loss Prevention Supervisor testified that when he investigated the incident shortly afterward, the light was on above the fire hose valve and that his photographs, also taken soon after the incident, show that the stairwell was lighted in the area of the fire hose valve.  Also, they point out that their Loss Prevention Corporate Director testified that the light over the fire hose valve stays on to keep the stairway well lit.

Initially, the Court agrees that Plaintiff has failed to show that the fire hose valve standing alone presents a dangerous condition when the stairwell is properly lit. This is because fire hose valve is open and obvious if the stairwell is properly lit.  However, viewing the facts in the light most favorable to the Plaintiff indicates a genuine issue of material fact as to whether the stairwell in the location of the fire hose valve was dimly lit.  Plaintiff testified that the light was not on above the fire hose valve and that the stairwell was dim or very dark.

Although Plaintiff's husband's photographs indicate that the area around the fire hose valve was well lit, these photographs were taken after he returned from taking Plaintiff to the hospital, presumably a few hours later and possibly at night. While there is considerable evidence contradicting the Plaintiff's assertion, the Court is not at liberty to make credibility determinations.

**V. <u>Conclusion</u>**

For the reasons set forth herein, Defendants' motion for summary judgment is denied in part as to Plaintiff's negligence cause of action and granted as to Plaintiff's wantonness cause of action.

DONE and ORDERED this the 16th day of June 2016.

<u>**s/ Kristi K. DuBose**</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**